Case No. 07-40277

IN THE

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

RETRACTABLE TECHNOLOGIES INCORPORATED

Plaintiff - Appellee

v.

ABBOTT LABORATORIES INC.

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
(5:05-CV-157)

REPLY BRIEF OF DEFENDANT - APPELLANT
ABBOTT LABORATORIES INC.

W. Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
Texarkana, Texas  77503
(903) 794-1303

Paul F. Strain
John A. McCauley
Venable LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland  21201
(410) 244-7400

Attorneys for Defendant - Appellant
Abbott Laboratories, Inc.

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ......................................................................................... 1

ANALYSIS .................................................................................................... 4

    I.    When interpreting the arbitration clause the
          Court must consider the contract as a whole,
          including Exhibit 12.2. ............................................................. 4

    II.   The different ADR clauses of the Credit Agreement
          and Registration Rights Agreement cannot override
          the plain meaning of the NMDA's arbitration clause ............... 6

    III.  The Court should not consider the contract
          drafting history as part of the contract's
          "surrounding circumstances." ................................................. 10

    IV.  The federal cases -- both in the labor and non-labor
          context -- are uniform in holding that the use of the
          word "may" in an arbitration clause provides a
          right of arbitration. ................................................................. 12

CONCLUSION ............................................................................................ 16

CERTIFICATE OF SERVICE .................................................................... 17

CERTIFICATE OF COMPLIANCE ........................................................... 18

# TABLE OF AUTHORITIES

Page

*American Italian Pasta Co. v. Austin Co.*,
    914 F.2d 1103 (8th Cir. 1990)......................................................... 6, 13

*Austin v. Owens-Brockway Glass Container, Inc.*,
    78 F.3d 875 (4th Cir.), *cert. denied*, 519 U.S. 980,
    117 S. Ct. 432 (1996) ......................................................... 13

*Block 175 Corp. v. Fairmont Hotel Mgmt. Co.*,
    648 F. Supp. 450 (D. Colo. 1986) ..................................................... 13

*Broesche v. Jacobson*,
    218 S.W.3d 267 (Tex. App.—Houston 2007)..................................... 5

*In re C & H News Company*,
    133 S.W.3d 642 (Tex. App.—Corpus Christi 2003)........................... 4

*Calpetco 1981 v. Marshall Exploration, Inc.*,
    989 F.2d 1408 (5th Cir. 1993)........................................................... 8

*Crisalli v. ARX Holding Corp.*,
    177 Fed. Appx. 417 2006 WL 1049122 at *3
    (5th Cir. April 20, 2006)............................................................... 11-12

*Communications Workers of Am. v. Southwestern Bell Tel. Co.*,
    415 F.2d 35 (5th Cir. 1969)............................................................. 10

*Deaton Truck Line, Inc. v. Local Union 612*,
    314 F.2d 418 (5th Cir. 1962), *reh'g denied* (1963)............................ 6

*Hanssen v. Qantas Airways Ltd.*,
    904 F.2d 267 (5th Cir. 1990)........................................................... 12

*Held v. Nat'l R.R. Passenger Corp.*,
    101 F.R.D. 420 (D.D.C. 1984) ......................................................... 13

*Jim Walter Homes, Inc. v. Schuenemann,*
    668 S.W.2d 324, 330 (Tex. 1984) ........................................................ 7

*Local 771, I.A.T.S.E. v. RKO General, Inc.,*
    546 F.2d 1107 (2d Cir. 1977) ............................................................. 6

*Lynchburg Foundry Co. v. Patternmakers League of N. Am.,*
    597 F.2d 384 (4th Cir. 1979) .............................................................. 14

*N.L.R.B. v. Gulf Atl. Warehouse Co.,*
    291 F.2d 475 (5th Cir. 1961) .............................................................. 10

*New York Cross Harbor R.R. Terminal Corp. v.*
    *Consol. Rail Corp.,* 72 F. Supp. 2d 70
    (E.D.N.Y. 1998) ............................................................................ 6, 13

*Paper, Allied-Industrial, Chemical and Energy Workers Int'l*
    *Union Local 4-2001 v. ExxonMobil Refining & Supply Co.,*
    449 F.3d 616 (5th Cir. 2006) .............................................................. 11

*In re Prudential Ins. Co. of Am.,*
    148 S.W.3d 124 (Tex. 2004), *reh'g denied* ........................................ 8

*Southwestern Bell Tel. v. Pub. Util. Comm. of Texas,*
    208 F.3d 475 (5th Cir. 2000), *reh'g denied* ...................................... 12

*Tower Contracting Co. v. Flores,*
    302 S.W.2d 396 (Tex. 1957), *reh'g denied* ........................................ 8

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574, 80 S. Ct. 1347 (1960) ................................................... 12

*XCO Prod. Co. v. Jamison,*
    194 S.W.3d 622 (Tex. App.—Houston 2006)................................... 11

*Young Bros., Ltd. v. Int'l Longshore and Warehouse Union, Local 142,*
    250 F. Supp. 2d. 1244 (D. Hawaii 2003) ........................................... 15

*Zars, Inc. v. LTS Lohmann Therapy Sys. Corp.,*
    2006 WL 2992719 (D. Utah Oct. 18, 2006)................................. 6, 13

## INTRODUCTION

The trial judge below was candid in observing that, but for consideration of the extrinsic evidence of a change in language from one draft of the contract to another, the arbitration clause as written required arbitration under Fifth Circuit law.  We therefore have a clear view of the legal error that this Court is being asked to correct:  Extrinsic evidence was used to find an ambiguity in a contract that is unambiguous on its face.

The simple question in this appeal is how a clause providing that disputes "may be resolved" by an arbitration process pursuant to which "either party may initiate" arbitration can reasonably be interpreted to mean that *neither* party may initiate arbitration without the other's consent.  The simple, straightforward answer is that it cannot.  RTI therefore dodges the question by trying to write key language out of the arbitration clause, by giving the language in separate agreements primacy over the language in the contract at issue, and by making repeated references to trial evidence that, while very much disputed by Abbott, is not in any way relevant to the purely legal question that is presented for appeal.  If, as RTI seems to argue, extrinsic evidence somehow provides a surer source for divining what the parties intended than the language they actually agreed to in a fully

integrated written contract, then there is not much left of the parol evidence rule.

There is a note of desperation in RTI's argument that the "either party may initiate" language in Exhibit 12.2 of the contract should have no bearing on how the arbitration clause is interpreted. RTI unsurprisingly offers no legal authority to support this idea, which is contrary to the universally-recognized principle that all parts of a contract should be considered in interpreting a contractual provision. RTI likewise offers no credible justification for ignoring the language of Exhibit 12.2, which is incorporated by reference in the arbitration clause at issue, while giving nearly dispositive weight to ADR clauses in the separate, narrow-purpose Credit Agreement and Registration Rights Agreement.

RTI's attempt to erase Exhibit 12.2 -- and its "either party may initiate" language -- is understandable. As RTI implicitly concedes, with that language in the mix its ambiguity argument is hopeless. Section 12.2 by itself plainly requires arbitration under applicable law. Any lingering doubt about that is removed by its reference to Exhibit 12.2, which makes the meaning of the arbitration clause about as clear as it could possibly be: Section 12.2 provides that disputes "may be resolved" by arbitration in

accordance with Exhibit 12.2, and Exhibit 12.2 expressly provides that

"either party may initiate" arbitration.

Trying to avoid an interpretation that renders the arbitration clause

impermissibly superfluous, RTI offers the lame theory that the arbitration

clause, including the detailed arbitration procedures, were negotiated and put

in the contract just in case the parties decided to agree to arbitration later,

and could thus have meaning and utility when a dispute arises in the future.

This makes no sense.  If future agreement is required, then either party could

refuse to arbitrate altogether, or condition agreement to arbitrate on altering

or scrapping entirely the procedures set forth in Exhibit 12.2.  This obvious

"out" for either party would make the arbitration clause an unenforceable

nullity in the eyes of the law.  The parties could easily have agreed upon

language that expressly provided for future mutual agreement to submit a

dispute to arbitration, or language that made clear that either party could

veto arbitration.  That they did not do so when it would have been so easy is

strong evidence that their intention was not to make arbitration subject to

mutual consent.

RTI's assertion that the agreed-upon arbitration procedures are not

suitable for "big" disputes, just "small" ones, is hard to understand.  Parties

frequently agree to forego extensive discovery and other procedural tools as

part of an agreement to arbitrate all kinds of disputes, both large and small. In any case there is nothing whatsoever in the contract to suggest that the arbitration procedures were reserved just for simple or small disputes.

It bears noting that RTI's repeated references to extrinsic evidence that was presented at the trial but was not before the District Court at the time that it found the ADR language ambiguous are entirely inappropriate. None of this evidence is germane because, as RTI says multiple times in its brief, this appeal has nothing to do with the conflicting evidence of intent presented at trial. The only question is whether the trial judge committed legal error in making the determination that the arbitration clause was ambiguous. The evidence presented at the trial has no bearing on this question and should therefore be disregarded.

## ANALYSIS

I.     When interpreting the arbitration clause the Court must <u>consider the contract as a whole, including Exhibit 12.2.</u>

Section 12.2 and Exhibit 12.2 are each integral parts of the arbitration agreement. Exhibit 12.2 cannot simply be ignored. When a contract expressly refers to an exhibit, as in Section 12.2's reference to Exhibit 12.2, that exhibit is incorporated into the contract by reference and is considered within the four corners of the contract for purposes of contract interpretation. *In re C & H News Company*, 133 S.W.3d 642, 645-46 (Tex. App.—Corpus

Christi 2003) (citations omitted). Language in an exhibit that has been incorporated by reference should be considered in making the legal determination whether a contract is ambiguous. *Broesche v. Jacobson*, 218 S.W.3d 267, 271-73 (Tex. App.—Houston 2007) (an analysis of whether language was ambiguous properly considered language in both the contract and the exhibit to the contract).

Treating Exhibit 12.2 as meaningful only if the parties first agree to arbitration -- as RTI urges -- would also nonsensically require a dispute to be presented twice to the parties' respective presidents (or their designees): Once in compliance with Section 12.2, and again pursuant to Exhibit 12.2 if the parties agreed to use that process. Reading Section 12.2 and Exhibit 12.2 together, as they should be, avoids this absurdity.

It is strange for RTI to argue that the Court cannot consider the language of Exhibit 12.2 when interpreting the rights of the parties with respect to arbitration, but simultaneously to assert that the Court should look to the language in the arbitration clauses of *different contracts* as an aid. Unlike the Credit Agreement and Registration Rights Agreement, Exhibit 12.2 is actually part of the contract under consideration.

II.     The different ADR clauses of the Credit Agreement and
        Registration Rights Agreement cannot override the plain
        meaning of the NMDA's arbitration clause.

RTI relies heavily on the fact that the Registration Rights Agreement
and the Credit Agreement use "shall" rather than "may" in their arbitration
clauses.  Such reliance is misplaced for a number of reasons.

First, as Abbott's opening brief showed, the difference between
"may" in one clause and "shall" or "will" in another, even between clauses
in the same agreement, receives virtually no weight in case law analysis.
*See* Appellant's Brief at 34-41, discussing *Deaton Truck Line, Inc. v. Local
Union 612*, 314 F.2d 418, 421 (5th Cir. 1962), *reh'g denied* (1963);
*American Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1103-4 (8th Cir.
1990); *Local 771, I.A.T.S.E. v. RKO General, Inc.*, 546 F.2d 1107, 1111-12,
1116 (2d Cir. 1977); *Zars, Inc. v. LTS Lohmann Therapy Sys. Corp.*, 2006
WL 2992719, *1, 3 (D. Utah Oct. 18, 2006); *New York Cross Harbor R.R.
Terminal Corp. v. Consol. Rail Corp.*, 72 F. Supp. 2d 70, 76-77 (E.D.N.Y.
1998).

Second, contract terms that have a clear meaning as to a particular
subject matter prevail over language in separate, though related, contracts.
In the seminal Texas case discussing the construction of contracts executed
at the same time, with the same purpose, and in the course of the same

transaction, the Texas Supreme Court rejected the argument that the

acceleration clauses in an installment note and lien contract should be

interpreted by reference to the terms in a related building contract. *Jim*

*Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 330 (Tex. 1984). The

court reasoned:

> Although at the outset we construed all three instruments
> together to determine the *entire agreement* between the parties,
> we conclude that for the limited purpose of determining the
> terms of acceleration for which the parties contracted, the clear
> terms of the acceleration provisions in the installment note and
> lien contract should be interpreted without reference to the
> description thereof contained in the building contract.

*Id.* (emphasis in original).

Third, RTI is relying on a principle of contract interpretation that is

applicable only to separate instruments executed at the same time, in the

course of the same transaction, *and for the same purpose*. *Id.* at 327. The

Credit Agreement and the Registration Rights Agreement were not prepared

for the same purpose as the NMDA. The NMDA described the rights and

obligations of Abbott and RTI with respect to the marketing and distribution

of RTI's needle products throughout the United States, while the other

agreements discussed Abbott's purchase of RTI stock and security for

Abbott's business loans to RTI.

Fourth, courts typically use separate contracts to interpret the entire agreement between the parties only when they are expressly incorporated into one another or must logically be referenced to give meaning to a provision in one of the contracts. *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1412 (5th Cir. 1993) (in evaluating whether accounting procedures described in the parties' operating agreement governed, the court recognized that the entire agreement between the parties consisted of a letter agreement for each investment *and* the operating agreement, which was expressly referenced and adopted in each letter agreement); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004), *reh'g denied* (jury waiver contained in lease agreement was expressly incorporated into the lessee's personal guaranty agreement through language in the latter in which the lessee promised to "faithfully perform and fulfill all of [the] terms" of the lease agreement); *Tower Contracting Co. v. Flores*, 302 S.W.2d 396, 398-99 (Tex. 1957), *reh'g denied* (technical provisions of the plans and specifications set out by the Army Corp of Engineers were expressly referenced in the subcontract for repair work governed by those provisions, thus both the subcontract and the technical provisions were examined to determine the entire agreement between the parties).

The arbitration provisions in the NMDA do not expressly incorporate or refer to the arbitration provisions in the Credit Agreement and Registration Rights Agreement, and there is no logical need to refer to those other agreements to define the parties' right to arbitration of disputes under the NMDA.  This is not a case in which all of the different instruments speak to a unitary right of arbitration governing all possible disputes under all contracts that are transactionally related to the NMDA, such that all the different arbitration clauses need to be harmonized.  Indeed, as RTI points out, each of the different contracts treats the subject of arbitration a little differently.  The parties' arbitration rights with respect to disputes arising under the NMDA are completely self-contained in the NMDA itself.

Fifth, and finally, one of the most significant flaws in RTI's argument is the false premise that Abbott denies any difference in meaning between "may" and "shall."  Abbott freely acknowledges that "may" and "shall" have different meanings depending on how they are used, but that is not the same as saying that any arbitration clause that uses the word "may" can be reasonably interpreted to give either party a right to veto arbitration.  Such a reading is logically incompatible with the NMDA's clause, which plainly states that "either party may initiate" arbitration, and if one does, the other party is bound to go along.  Nothing in this language even remotely suggests

that the other party has the right or power to thwart arbitration by withholding consent. The arbitration clause in the NMDA, on the one hand, and the ones in the Credit Agreement and the Registration Rights Agreement, on the other, are not opposites; each is compatible with a right to compel arbitration. In the former, arbitration is required if either party requests it. In the latter, arbitration is the prescribed method of dispute resolution by default; it requires no request by either party.

III.    The Court should not consider the contract drafting history as part of the contract's "surrounding circumstances."

Surrounding circumstances should not be considered by the Court to *create* an ambiguity in an otherwise unambiguous contract. Here the evidence relied on by the District Court was the negotiating history reflected in different drafts of the NMDA, supplemented by RTI explanatory affidavits. As this Court has previously recognized, such bargaining history is off limits when a contract's meaning is clear on its face:

> [I]n this circuit the courts must construe the "language of the contract as finally agreed upon…in accordance with ordinary rules of construction *without reference to the give and take of the bargaining sessions* which produced the final terminology. Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract."

*Communications Workers of Am. v. Southwestern Bell Tel. Co.*, 415 F.2d 35, 40 (5th Cir. 1969) (citing *N.L.R.B. v. Gulf Atl. Warehouse Co.*, 291 F.2d

475, 477-78 (5th Cir. 1961)).   The Fifth Circuit has recently reaffirmed this

principle.  *Paper, Allied-Industrial, Chemical and Energy Workers Int'l*

*Union Local 4-2001 v. ExxonMobil Refining & Supply Co.*, 449 F.3d 616,

620-21 (5th Cir. 2006).

On close inspection, the cases upon which RTI relies in its brief are

entirely consistent with these longstanding Fifth Circuit cases and Abbott's

position that the District Court made a mistake by considering extrinsic

evidence to find ambiguity.  In *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622,

627-28 (Tex. App.—Houston 2006, pet. denied), the court looked to

"surrounding circumstances," in the form of expert testimony regarding

industry use of certain contract terms, but only after determining that the

language of the contract in and of itself was unclear.  Ultimately, in fact,

evidence of the circumstances surrounding the execution of the contract was

used to *negate*, not *create*, an ambiguity:  "This evidence was not admitted

to create an ambiguity or vary the terms of the [agreement], but to explain its

specialized terms."  *Id.* at 629 n. 4.  Similarly, in *Crisalli v. ARX Holding*

*Corp.*, 177 Fed. Appx. 417, 2006 WL 1049122 at *3 (5th Cir. April 20,

2006), the language used by the parties was *not* unambiguous as a matter of

law and therefore "[t]he district court did not err in looking to extrinsic

custom and usage evidence . . . as an aid in its quest to determine if the

misunderstanding between the parties amounted to a legal ambiguity." *Id.*

*See also Hanssen v. Qantas Airways Ltd.*, 904 F.2d 267, 270-71 (5th Cir.

1990) (court determined language in a letter contract between the parties was

ambiguous *before* using surrounding circumstances to interpret the

agreement); *Southwestern Bell Tel. v. Pub. Util. Comm. of Texas*, 208 F.3d

475, 486 (5th Cir. 2000), *reh'g denied* (contract expressly provided that

undefined terms were to be "construed in accordance with their end user

usage in the …industry as of the effective date of [these] Agreement[s],"

justifying the court's consideration of surrounding circumstances evidence

as to industry usage of the word "terminate").

> IV.   The federal cases -- both in the labor and non-labor context --
> are uniform in holding that the use of the word "may" in an
> <u>arbitration clause provides a right of arbitration.</u>

That many of the federal cases cited by Abbott arise in the collective

bargaining context has no real significance.  Arbitration in labor law can

sometimes be "the substitute for industrial strife," just as "[i]n the

commercial case, arbitration is the substitute for litigation." *United*

*Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578,

80 S. Ct. 1347 (1960).  But even when the alternative to arbitration is court

litigation, and lockouts or strikes are not a risk, decisions in the labor context

have continued to recognize that "may" provides either party with a right to

compel arbitration of disputes. *See, e.g.*, *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 877-78 (4th Cir.), *cert. denied*, 519 U.S. 980, 117 S. Ct. 432 (1996) (affirming dismissal of employee's *lawsuit* for failure to comply with arbitration provision in collective bargaining agreement).

Cases outside the collective bargaining context, to which RTI gives short shrift, have also interpreted "may" to confer a right upon either party to insist upon arbitration of disputes. *See Am. Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1104 (8th Cir. 1990); *Zars, Inc. v. LTS Lohmann Therapy Sys. Corp.*, 2006 WL 2992719, *1 (D. Utah Oct. 18, 2006); *New York Cross Harbor R.R. Terminal Corp. v. Consol. Rail Corp.*, 72 F. Supp. 2d 70, 76-77 (E.D.N.Y. 1998); *Block 175 Corp. v. Fairmont Hotel Mgmt. Co.*, 648 F. Supp. 450, 451 (D. Colo. 1986); *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420, 423-4 (D.D.C. 1984). These cases considered the definition of "may" that was applied by the courts in the labor relations context, agreed with that definition, and uniformly applied that definition to interpret agreements outside of the labor context.

RTI cites two federal cases as standing for the proposition that the use of the word "may" in an arbitration provision should be interpreted to mean that arbitration is "voluntary." For reasons that a careful reading of the cases makes obvious, neither were ever cited by RTI for this proposition in any of

the multiple memoranda it submitted to the court below.  To the extent they are germane at all, they are consistent with all other federal cases that have interpreted the word "may" as conferring a right to arbitration.

In *Lynchburg Foundry Co. v. Patternmakers League of N. Am.*, the court was called upon to interpret a collective bargaining agreement.  597 F.2d 384, 386 (4th Cir. 1979).  Contrary to RTI's description, the collective bargaining agreement at issue did not provide "mirror" rights to both parties.  Rather, the agreement provided that the company "may" seek arbitration of disputes relating to the anti-strike provisions of the agreement, while the union "may" invoke arbitration of disputes relating to the company's internal processing of employee complaints.  *Id.*  The company filed a lawsuit against the union relating to the contract's anti-strike provisions, and the union argued that the company was required to arbitrate prior to filing suit.  *Id.* at 387.  The court rejected this argument, finding that the language stating that the company "may" seek arbitration of certain disputes did not mandate that the company *must* seek arbitration of such disputes, but gave the company *a unilateral option to seek arbitration of such disputes*.  *Id.*  If the company exercised its right to seek arbitration, the union was obligated to submit to arbitration -- an interpretation of the word "may" that is entirely consistent with Abbott's position in this litigation.  *Id.* at 388 ("there was no

obligation upon the union to arbitrate *in the absence of a request by the company*") (emphasis added).

Similarly, in *Young Bros., Ltd., v. Int'l Longshore and Warehouse Union, Local 142*, the court interpreted a collective bargaining agreement provision that gave an employer a unilateral right to compel arbitration if it so chose.  250 F. Supp. 2d 1244, 1249-50 (D. Hawaii 2003).  The court found that while the parties' use of the word "may" provided the employer with a unilateral *right* to arbitrate if it elected to do so, the employer *was not compelled* to institute such proceedings.  *Id*.  This is no different from the right Abbott received in the NMDA arbitration clause.

Inexplicably, RTI also tries to distinguish Abbott's authority by indicating that some of the contracts at issue in the federal cases expressly used language indicating that "either party" may submit a dispute to arbitration.  *See* Appellee's Brief, cases at 49-50.  RTI admits that the use of such language "conveys the sense that *either party may commence the arbitration proceeding*."  *Id.* at 50 (emphasis added).  Thus, RTI admits that the operative language contained in Exhibit 12.2 "conveys the sense that either party may commence the arbitration proceeding."

## CONCLUSION

The trial judge made a mistake by considering evidence extrinsic to the contract to find and resolve an ambiguity that -- as the trial judge himself acknowledged -- is not found in the four corners of the contract under applicable law.  This Court should now take a fresh look at the contract, avoid the District Court's mistake and correct its error, and remand this case with instructions to dismiss the complaint and compel arbitration.

Respectfully submitted,

_____
Paul F. Strain
John A. McCauley
Venable LLP
Suite 1800
Two Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400

W. Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
Texarkana, Texas  77503
(903) 794-1303

Attorneys for Defendant - Appellant,
Abbott Laboratories Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, JOHN A. McCAULEY, certify that today, October 2, 2007, a copy of the Reply Brief for Defendant - Appellant, including a CD-Rom containing a PDF copy of the Brief, were served via UPS Next Day Delivery upon:

Nicholas H. Patton
PATTON, TIDWELL &
SCHROEDER, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas    75505-5398

George E. Bowles
Paul F. Schuster
Cynthia Timms
LOCKE LIDDELL & SAPP
2200 Ross Avenue
Suite 2200
Dallas, Texas 75201-6776

Attorneys for Plaintiff
Retractable Technologies, Inc.

I also certify that on this date seven copies of Defendant - Appellant's Reply Brief, and a CD-Rom containing a PDF copy of the Reply Brief, were sent via UPS Next Day Delivery to the Clerk of the Court, United States Court of Appeals for the Fifth Circuit, 600 S. Maestri Place, New Orleans, LA 70130.

_____
John A. McCauley

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32 and 5th Cir. R. 32, undersigned counsel certifies the following:

1.      This Brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) and 5th Cir. R. 32.2 because this Brief contains 3,473 **words**, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.      This Brief complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and 5th Cir. R. 32.1, and the type style requirements of Fed. R. App. P. 32 (a)(6), because this Brief has been prepared in a proportionally spaced typeface using **Microsoft Word 2003 in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.**

3.      The Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits, may result in the Court's striking this brief and imposing sanctions against the person signing the brief.

_____
John A. McCauley
Attorney for Defendant - Appellant,
Abbott Laboratories Inc.